## MOOR v. MAGOUIRK.

### No. 3891.

Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1930.

Rehearing Denied Nov. 13, 1930.

Will C. Thompson, of Dallas, and S. F. Leslie, of Bonham, for appellant.

Cunningham & Lipscomb, of Bonham, for appellee.

HODGES, J.

In December, 1928, the appellee, Magouirk, was the owner of a bus line which he operated over the highway extending from Paris, in Lamar county, to Sherman, in Grayson county. Being desirous of selling that line, he executed and delivered to appellant, Moor, the following written instrument:

"Bonham, Texas, 12/19/28.

"I hereby give J. B. Moor an option on my Bus Franchise from Paris to Sherman, and all equipment as shown by inventory attached hereto, at a price of $47,500.00 to be paid in cash on consent of Texas Railroad Commission to transfer. Said equipment to be delivered free from all incumbrances, or J. B. Moor or his assigns may assume any indebtedness and deduct the amount from the consideration of the sale.

"Said J. B. Moore or assigns to have immediate possession of all property and control of the business and revenue therefrom immediately on deposit of the herein named consideration in escrow in any bank in Bonham, Texas, pending the final consent of the R. R. Commission or the transfer.

"This option to purchase is given to the said J. B. Moor or his assigns until six o'clock p. m. Dec. 19th, 1928, at which time this option becomes null and void unless accepted.

"It being understood that the purchaser assumes all leases, mail contract, paper and contracts.

"J. C. Magouirk

"I hereby agree to pay J. B. Moor $2500.00 out of the sale price of an option to end at 6 p. m. Dec. 19th, 1928, at a gross price of $47,500.00 and promise to pay the $2500.00 on date of the payment of or settlement of the consideration of the sale.

"J. C. Magouirk."

To this contract was appended a list of articles constituting the equipment which belonged to the line.

It is conceded that this instrument was executed on the 18th instead of the 19th of December, and that the latter date was an error. The proof shows that on December 18th, within a few hours after this contract was signed by Magouirk, the appellant, Moor, found a purchaser for the line in the Dixie Motor Coach Company. Afterwards, on the same day, the appellant and the appellee drove to Fort Worth where a written con-

tract of sale was entered into between the appellee and the Dixie Motor Coach Company. That contract was upon the terms stipulated in the option contract copied above. Ten dollars of the purchase price was paid in cash, and, by agreement, the remainder was placed in escrow in a Dallas bank, to be paid when the transfer was approved by the railroad commission. That approval was secured a few days later, and the balance of the purchase money was paid, thus completing the sale transaction upon the terms stipulated in the option agreement. Some time later the appellant demanded the payment of $2,500 as commission for making the sale. Upon the refusal of appellee to pay any amount, this suit was filed. The defense as stated in appellee's brief is:

"(1) That there was no consideration for the written contract upon which the suit was based.

"(2) That the language employed in that written contract is unambiguous and that the same is not open to the construction of the courts. The appellee contending that said contract, if anything, provided for option to purchase by the appellant or some one to whom he had assigned his option.

"(3) That in all events the alleged contract was not accepted within the time and in the way required by the provisions of the written instrument alleged as the basis for the suit."

At the conclusion of the evidence, each party requested a peremptory instruction in his favor. The court refused that requested by the appellant, and directed the jury to return a verdict in favor of appellee, the defendant.

While there are several assignments of error in the record, we shall discuss only those which relate to the peremptory instructions.

The material facts are practically undisputed. Moor, the appellant, testified in substance as follows:

The contract sued on was signed about 1:30 p. m., Tuesday, December 18, 1928. Moor immediately thereafter went home for his lunch and telephoned Mr. A. P. Barrett, the president of the Dixie Motor Coach Company, and submitted to him the proposition to buy the bus line. Witness was not permitted to testify as to what passed between him and Barrett. He next saw appellee about 2:30 the same afternoon, and informed him that he had sold his bus line, and was ready to close the contract. Appellee then asked what was the next thing to be done. Moor told him that they had to go to Dallas to close with the attorneys for the company. They drove to Dallas in the appellee's car, and, not being able to find the attorneys at that place, drove on to Fort Worth, and there closed the contract of sale that night. The necessary papers were signed and all the terms agreed upon. Moor testified: "We went on a bus and drove to Ft. Worth to the Dixie Motor Coach's office and immediately met Mr. A. P. Barrett and Mr. A. T. Barrett delivered these papers to him and told him Mr. Magouirk had accepted the proposition, that we were there to close the contract in detail, and we discussed the matter of this deposit in the Bonham bank, the matter of payment for the franchise, which he actually could not deliver until the Railroad Commission of Texas consented to the transfer to Magouirk; the attorneys then drew a contract in accordance with that agreement and Magouirk signed it, and he and I then came back to Dallas and went to the Hilton Hotel and spent the night. I asked Magouirk if there was anything else to be done and he said no, and we came on home the next morning." He further testified: "I procured a purchaser for that line before six o'clock of the day which he gave me the option, the Dixie Motor Coach, a Corporation—I believe they called it. I procured that purchaser about 2:30 not later than 3:30 and not earlier than 1:30 p. m., December 18th, 1928. I informed Magouirk of it immediately thereafter, as quickly as I could walk from home, a distance of ten blocks from the telephone, and informed Magouirk the deal had been consummated, his offer had been accepted. After I procured a purchaser for the property they took the property and paid for it."

Magouirk testified in his own behalf, but did not contradict any of the foregoing statements quoted from the testimony of the appellant. He did say that he had not received the purchase money for the sale of the property from Moor himself. He admitted getting the money from the Dixie Motor Coach Company. He further stated that the sale contract to the Dixie Motor Coach Company was not executed until after 7 o'clock of the 18th of December, 1928. He did not deny that he was notified of the acceptance of the offer before 6 o'clock p. m. December 18th.

■ The defense of want of consideration for that portion of the contract which gives an option to purchase the property before 6 o'clock p. m. on the date the contract was executed has no application. This is not a suit to enforce a contract giving to Moor or his assignee the option to purchase the property, but one to collect a commission according to the stipulations in the second portion of the written agreement executed by Magouirk to Moor. The option to purchase having been exercised within the time limit and the sale thereafter completed, the absence of a consideration for the giving of that option is of no importance. The gratuitous promise had been performed.

■ The written contract between the appellant and the appellee contained two ap-

parently distinct agreements. One was an option to purchase the property within the time mentioned, the other was an agreement to pay to Moor $2,500 out of the sale price of the option. It is this second agreement upon which this suit is founded. Magouirk knew that, Moor did not intend to purchase the property for himself. He testified that Moor told him that he (Moor) represented some big corporation in Louisiana, and, before the sale was concluded, said that he was representing the Dixie Motor Coach Company. Magouirk made no objection to a sale of the property to the Dixie Motor Coach Company. Evidently the $2,500 mentioned in the second part of the contract was intended as a commission to compensate Moor for his services in procuring a sale of the property upon the terms and within the time stipulated in the first portion of the contract. De La Cuesta v. Armstrong Holdings Co., 48 Cal. App. 487, 192 P. 135.

■ This option contract was an offer made by Magouirk to sell the property to Moor or any purchaser that Moor might present, if that offer was accepted at any time before 6 p. m., of the day the contract was executed. That offer was accepted, and the acceptance agreed to within that time. All that remained to be done after the acceptance of the offer was to reduce the contract of sale to writing. It was not necessary to a performance of the agreement between Magouirk and Moor that a transfer of the property should be consummated before 6 p. m. 23 R. C. L. 1290, 1291.

■ The appellee contends that the money was not deposited in a Bonham bank, as required by the terms of the written agreement. The record shows that the appellee consented to a deposit of the money in escrow in a Dallas bank. He thereby waived the requirement that it should be deposited in a Bonham bank. We think the state of the evidence is such that the court should have instructed a verdict for the appellant.

The judgment will therefore be reversed, and judgment here rendered for the appellant for the full amount sued for.